UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HUMBERTO M. ACOSTA (A-Number: 205-908-241),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:26-cv-6700-DC-JDP

FINDINGS AND RECOMMENDATIONS

In 2008, petitioner Humberto M. Acosta entered the United States without permission. In 2013, ICE took him into custody after a DUI arrest and released him on bond with a notice to appear in immigration court. On June 12, 2025, an immigration judge granted petitioner's request for administrative closure of his removal case in light of his U.S. citizen wife's visa petition on his behalf. On July 27, 2026, ICE ordered petitioner to come to its office, where agents re-detained him. He has been detained since that date without a bond hearing. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States without permission in 2008. ECF No. 1 at 5. In August 2012, petitioner was convicted of driving under the influence. ECF No. 5 at 7, 17. In June 2013, petitioner was convicted of driving under the influence again. *Id.* at 4, 18. ICE officers took him into immigration custody upon his release from custody. *Id.*; ECF No. 5 at 4. On June 24, 2013, ICE issued petitioner a notice to appear before an immigration judge. *Id.* at 7. That notice to appear charges petitioner with being an "alien present in the United States without being admitted or paroled . . . ." ECF No. 5 at 10. ICE released him on June 26, 2013, on a $2,000 bond. *Id.*

In September 2013, petitioner was convicted of driving under the influence. *Id.* at 10, 19. In May 2019, petitioner was convicted of driving under the influence. *Id.* at 10, 19-20. In 2022, petitioner was arrested for driving under the influence, but charges were not filed and arrest relief was granted in March 2025 pursuant to California Penal Code section 851.93. *Id.* at 20. Petitioner indicates that "since that time he has stopped drinking alcohol completely, has completed the terms of his probation, and has had no arrests, charges of conviction in the United States or anywhere in the world." ECF No. 1 at 5.

Petitioner has appeared in immigration court several times since ICE issued him an NTA in 2013. ECF No. 6 at 2. Petitioner filed an asylum application in March 2016, which was administratively closed by an immigration judge. ECF No. 1 at 5. Petitioner's U.S. citizen wife filed a pending visa petition with USCIS on his behalf. *Id.* Petitioner and his wife have two U.S. citizen children. *Id.* Based on this pending petition, an immigration judge administratively closed petitioner's immigration case on June 12, 2025. ECF No. 6 at 5. According to ICE, an appeal is pending with the Board of Immigration Appeals ("BIA"). ECF No. 5 at 7. The EOIR automated case information does not indicate a pending BIA appeal, and states that petitioner's immigration case is set for a master hearing on September 25, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last checked September 10, 2026).

On July 27, 2026, ICE officers required petitioner to come to the San Francisco ICE office for an interview. ECF No. 5 at 6. Petitioner attended that scheduled interview, where ICE agents

re-detained him. The agents did not provide petitioner any written notice explaining the basis for the revocation of his release. ECF No. 1 at 2. The ICE Form I-213 states that a deportation officer told petitioner that he was being "arrested for his multiple DUI convictions while he was on bond." ECF No. 5 at 6. Petitioner did not receive any pre-deprivation hearing. ECF No. 1 at 2. Respondent indicates that petitioner was re-detained pursuant to 8 U.S.C. § 1225(b)(2)(A). ECF No. 5 at 1. On August 8, 2026, a deportation officer determined that petitioner would be detained pending his immigration proceedings. ECF No. 5 at 12.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## Analysis

Petitioner argues that his re-detention without a pre-deprivation hearing violates the Due Process Clause. ECF No. 1 at 7. Respondents do not address this argument. ECF No. 5 at 1. Rather, respondents state that petitioner is being detained without a bond hearing pursuant to 8 U.S.C. § 1225(b)(2)(A). *Id.* However, that section does not apply to noncitizens, like petitioner, "present without admission who are apprehended in the interior of the United States." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026).[1] Accordingly, the court finds that 8

[1] Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41. This holding accords with five other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th

U.S.C. § 1225(b) is not a proper basis for petitioner's detention.

Petitioner claims that his re-detention violates the constitution. The court engages in a two-part inquiry: first, a court must consider whether there exists a protected liberty interest under the Due Process Clause, and, second, a court must evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

Petitioner is no different. Immigration authorities released him on a $2,000 bond in June 2013. ECF No. 5 at 7. Petitioner remained out of custody, living in the United States, until ICE ordered him to a scheduled interview and re-detained him on July 27, 2026. *Id.* at 6. Petitioner's release on bond and thirteen years out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

---

Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. July 30, 2026).

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during the thirteen years he spent on immigration bond in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner on bond in 2013, despite his two prior DUI convictions, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is

'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id.* On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention, *see* ECF No. 5 at 1, indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondent has provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing. *See* ECF No. 5. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 7. Respondent does not address the issue except to claim that petitioner may request a bond hearing

under section 1226(a).[2] ECF No. 5 at 1.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up).

Here, respondent does not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. ICE was aware of petitioner's two prior DUI convictions when it released him on bond in June 2013. Although petitioner was again convicted of DUI in September 2013 and in 2019, ICE allowed him to remain on bond. When petitioner was arrested for a DUI in 2022, no charges were filed and arrest relief was automatically granted pursuant to California Penal Code section 851.93. ECF No. 5 at 20. Since 2022, it is uncontested that petitioner has gotten sober, and his U.S. citizen wife has filed a petitioner on his behalf with USCIS. ECF No. 1 at 5. Based on this family visa petition, the immigration judge administratively terminated petitioner's removal case in June 2025. ECF No. 6 at 5.

The record reflects that petitioner was in compliance with his bond in July 2026 when ICE ordered him to come to its office. ECF No. 5 at 6. At that time, it had been over four years since petitioner's last arrest, and seven years since his last conviction. Petitioner attended the

[2] In *Matter of Yajure Hurtado*, the BIA held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228-29 (BIA 2025). As noted, respondents assert that petitioner is detained under this section. ECF No. 5 at 1. Respondents offer no assurances that, if petitioner requested a bond hearing, an immigration judge would have the authority to provide him one. *See id.*

scheduled interview at the ICE office. *Id.* Respondents do not argue that petitioner is a danger or a flight risk. *See* ECF No. 5.

This is not a situation where a noncitizen is arrested by local law enforcement and then transferred to ICE custody, although courts have held that a pre-deprivation hearing is necessary even in those circumstances. *See J. O. J.L. v. Blanche*, No. 1:26-cv-4142-DAD-JDP, 2026 WL 1745732, at *4 (E.D. Cal. June 17, 2026), *report and recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026); *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026)*; Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026). Rather, ICE decided to call petitioner into its office on July 27, 2026, and re-detain him years after his prior DUIs.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See id*.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 205-908-241) from their custody on the same conditions as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-

deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 11, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE